### THE ADRIATIC.

(District Court, E. D. Pennsylvania. October 9, 1918.)

No. 46.

SHIPPING ◆═51—VIOLATION OF CHARTER—"CONTROL OF PRINCES."

Under the clause in a charter party excepting "control of princes," a foreign ship is released from the charter by the actual exercise of such control through requisition by her home government, and a court of this country cannot question the legality of its exercise.

In Admiralty. Suits by H. Baars & Co., a corporation, against the British steamship Adriatic and against W. H. Cockerline & Co., owners of the Adriatic. Sur trial hearing on libel, answer, and proofs. Decree for respondent.

The ship was chartered to libelant; the charter party containing the following provisions:

"20. The act of God, * * * arrests and restraints of princes, rulers, and people, * * * excepted."

"28. If vessel be requisitioned by the British admiralty, this charter is to be null and void."

The suit was for breach of such charter. On hearing of the case the British embassy appeared by counsel, who, as amici curiæ, filed the following suggestions:

(1) That the British steamship Adriatic was duly requisitioned by the British admiralty, which is an integral part of the government of the United Kingdom of Great Britain and Ireland, by a notice dated the 8th day of November, 1915, served on her owners, W. H. Cockerline & Co., at Hull, England, on or about that date. Pursuant to such requisition the British consul general at Philadelphia, Pa., by order of the admiralty, gave instructions to the master of the Adriatic, on November 23, 1915, as to the subsequent movements of the vessel. The period of the requisition was indefinite, and after it became operative as aforesaid the steamship Adriatic was continuously in the service of the British government until her loss at sea on or about October 31, 1916, and during that period she was operated solely under the orders and directions of the British admiralty.

(2) That the steamship Adriatic was of British registry, and belonged to subjects of Great Britain, and the requisition of said steamship was a governmental action, by the government of Great Britain, and should not be inquired into by this court.

(3) That by reason of the said requisition the steamship Adriatic was, at the time of the service of the process of this court in these causes, a vessel in the service of the British admiralty and under its direction and control, and as such was not subject to arrest or detention by process of this court.

(4) That this court should decline to adjudicate these cases, on the ground that they involve the relations between the British government and the owners of a British steamship, and call for a determination by this court of the effect of governmental acts of the British government, and are, in effect, an attempt on the part of the libelants to hold the respondent liable for such acts.

(5) That this court should decline to adjudicate upon any rights or claims of the libelants as charterers of a British steamship against the said steamship or her owner, in so far as such rights or claims arise out of the requisition of the said steamship by the British government.

John C. Avery, of Pensacola, Fla., and Willard M. Harris, of Philadelphia, Pa., for libelant.

Kirlin, Woolsey & Hickox, of New York City, and Biddle, Paul & Jayne, of Philadelphia, Pa. (John M. Woolsey, of New York City, and Howard H. Yocum, of Philadelphia, Pa., of counsel), for respondent.

Frederic R. Coudert. and, Howard Thayer Kingsbury, both of New York City, amici curiæ.

DICKINSON, District Judge.   This cause, as argued, presents many interesting features and advances many questions for discussion. We see no need, however, to discuss the case in other than its main features.   As thus viewed the case is this:

The respondent, as is frankly admitted, entered into a charter party, the contractual obligation of which was that the ship should render service to the libelant.   The contract, however, contained the usual provision in the event of the interference expressed in the phrase "control of princes."   The assertion of this control forbade performance and is given to excuse the default.   The ship was requisitioned by the sovereign to whom her master and owners owed allegiance.   The fact is not in dispute that there was the practical assertion of such authority over the movements of the vessel.   A question is sought to be raised of the legality of the authority exercised in the respect of whether it extended to vessels outside the "home waters" of the sovereign. This question is set at rest by two considerations.   One is that foreign law is a fact to be established by evidence, and that the authority asserted existed under the foreign law has been established, not only by the weight of the evidence, but by the only evidence in the cause.   The other is that—

"No court [of one jurisdiction] will undertake to determine whether the conduct of duly appointed officers of [a foreign power] is within the scope of their delegated authority viewed as a question of the foreign municipal law. Either the conduct of the officials is authorized, in which case it has the only warrant of law possible, or it is unauthorized, in which case it rests upon the foreign power first to repudiate it, and so to open the question of the effect of acts thereupon conceded to have been without warrant of law." The Florence H. (D. C.) 248 Fed. 1017.

In the instant case the authority prompting the act of respondent is not only not repudiated, but the act is avowed to be in pursuance of the command of the sovereign, and the respondent supported in what was done, and full responsibility for the act is assumed by the sover-

eign. The embassy, representing the sovereign, appears by counsel to present this state of the facts to the court.

The rule followed in like cases prevails in this, that the court should decline to adjudicate any claim of right advanced by the libelant which grows out of the requisitioning of the respondent vessel by the government to which its master and owners owe the duty of obedience.

A formal decree to carry this ruling into effect may be submitted.